Appeal No. 11-57194

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

———————

*Tyrone L. Robinson, Plaintiff and Appellant,*

*v.*

*Bank of America, N.A., Defendant and Appellee.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE GEORGE H. KING, JUDGE
CASE NO. 2:11-CV-03939-GHK-JEM

———————

**DEFENDANT-APPELLEE BANK OF AMERICA, N.A.'S
ANSWERING BRIEF**

———————

O'MELVENY & MYERS LLP
FRAMROZE VIRJEE (S.B. #120401)
FVIRJEE@OMM.COM
400 SOUTH HOPE STREET
LOS ANGELES, CA 90071
TELEPHONE: (213) 430-6000
FACSIMILE: (213) 430-6407

O'MELVENY & MYERS LLP
ADAM KARR (S.B. #212288)
AKARR@OMM.COM
RYAN RUTLEDGE (S.B. #222642)
RRUTLEDGE@OMM.COM
LAUREN ELKERSON (S.B. #274666)
LELKERSON@OMM.COM
610 NEWPORT CENTER DR.
SUITE 1700
NEWPORT BEACH, CA 92660
TELEPHONE: (949) 760-9600
FACSIMILE: (949) 823-6994

Attorneys for *Defendant and Appellee Bank of America, N.A.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, defendant-appellee Bank of America, N.A. provides the following corporate information:

Defendant-appellee Bank of America, N.A. is owned by BANA Holding Corporation.

BANA Holding Corporation is owned by BAC North America Holding Company.

BAC North America Holding Company is owned by NB Holdings Corporation.

NB Holdings Corporation is owned by Bank of America Corporation.

Bank of America Corporation is a publicly-held company whose shares are traded on the New York Stock Exchange. It has no parent company and no publicly-held company owns more than 10% of Bank of America Corporation's shares.

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-appellee Bank of America, N.A. believes that oral argument is appropriate in this case.  The District Court applied settled law in dismissing the Complaint on the ground that plaintiff-appellant Tyrone L. Robinson's ("Robinson's") claims were preempted by the National Bank Act.  The correctness of that decision is not subject to serious dispute, but oral argument is warranted to clarify the confusion Robinson's brief seeks to sow over the applicable legal principles.

# TABLE OF CONTENTS

**Page**

INTRODUCTION .............................................................. 1

JURISDICTIONAL STATEMENT .................................... 4

STATEMENT OF ISSUES ................................................ 4

STATEMENT OF THE CASE .......................................... 5

STATEMENT OF FACTS .................................................. 6

    A.    Background Facts Regarding BANA's CashPay Card Service ................................................... 7

    B.    Robinson Was Obligated To Pay A Monthly Maintenance Fee For BANA's CashPay Card Service ................................................................. 8

    C.    While Robinson Could Have, As A Practical Matter, Withdrawn Cash From Bank Branches And Avoided The Monthly Maintenance Fee, He Had No Right To Do So ................................................ 9

SUMMARY OF ARGUMENT ........................................ 11

STANDARD OF REVIEW .............................................. 15

STATEMENT OF ARGUMENT ..................................... 16

I.    ROBINSON'S STATE LAW CLAIMS ARE PREEMPTED BY THE NATIONAL BANK ACT .............. 19

    A.    Robinson's Claims Fall Within The Preemptive Scope Of Section 7.4007(b)(3) .................................... 21

        1.    The District Court Correctly Held That Robinson's State Law Claims Purport To Impose "Disclosure Requirements" On BANA .............................................................. 21

        2.    It Is Irrelevant That Robinson's Claims Are Based On Laws Of General Application That Do Not Necessarily Require Disclosures ...................................................... 23

# TABLE OF CONTENTS
(continued)

Page

B.   Robinson's Claims Are Preempted Under Section 7.4007(b)(3), And Section 7.4007(c)(2) Does Not Alter That Conclusion ................................................... 27

    1.   The NBA Preempts Some Tort Claims ............. 27

    2.   Robinson's Tort Claims Are Preempted ............ 30

II.   ROBINSON'S CLAIMS FAIL AS A MATTER OF LAW ......................................................................... 34

A.   Robinson Fails To State A Claim Under The Consumer Legal Remedies Act ................................... 35

    1.   Robinson Does Not Allege That BANA Made An Affirmative Misrepresentation ........... 36

        a.   A Contractual Term Disclaiming "Customer Service" Is Not Rendered "False" By The Fact That CashPay Customers Could Withdraw Cash ............ 37

        b.   A Party's Waiver Of A Contractual Term Designed For Its Benefit Does Not Turn That Contractual Term Into An "Affirmative Misrepresentation" Under The CLRA ..................................... 39

    2.   Robinson Alleges That BANA "Omitted" To Make Statements That It Had Absolutely No Duty To Make ................................................ 41

        a.   The Existence Of A Duty Is A Question Of Law, Not An Allegation Of Fact, And Robinson Fails To Allege Any Duty Here ............................. 41

        b.   Robinson Takes Out Of Context Principles Regarding Duties To Disclose That Cannot Apply Here .......... 43

B.   Robinson's Fraud By Omission Claim Fails As A Matter Of Law ............................................................. 48

# TABLE OF CONTENTS
(continued)

**Page**

C.    Plaintiff Has Not Stated A Viable Claim For Unfair Competition ....................................................... 50

    1.    Robinson Lacks Standing To Bring A UCL Claim.................................................................. 51

    2.    Robinson's UCL Claim Fails On The Merits..... 53

        a.    BANA's Conduct Was Not Unlawful...... 55

        b.    BANA's Conduct Was Not Fraudulent................................................. 56

        c.    BANA's Conduct Was Not Unfair .......... 57

            (1)    Robinson's Allegations Are Untethered To Any Legislatively Declared Policy ........ 58

            (2)    Robinson's UCL Claim Fails Under The FTC Test ...................... 61

            (3)    What Robinson Complains Of Is Simply Not Unfair...................... 62

CONCLUSION................................................................... 63

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aguayo v. U.S. Bank,*
    653 F.3d 912 (2011) ......................................................... 15, 21, 29

*Am. Bankers Ass'n v. Lockyer,*
    239 F. Supp. 2d 1000 (E.D. Cal. 2002) ................................. 24, 25

*Bank of Am. v. City & County of S.F.,*
    309 F.3d 551 (9th Cir. 2002) ..................................... 15, 20, 32, 34

*Bardin v. DiamlerChrysler Corp.,*
    136 Cal. App. 4th 1255 (2006) ........................................ 35, 46, 47

*Barnett Bank of Marin County, N.A. v. Nelson, Florida
    Insurance Commissioner, et al.,*
    517 U.S. 25 (1996) .............................................................. passim

*Barriga v. JP Morgan Chase Bank, N.A.,*
    2010 WL 1037870 (N.D. Cal. March 19, 2010) .......................... 60

*Berryman v. Merit Prop. Mgmt., Inc.,*
    152 Cal. App. 4th 1544 (2007) ..................................................... 55

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC,*
    162 Cal. App. 4th 858 (2008) ....................................................... 49

*Buller v. Sutter Health,*
    160 Cal. App. 4th 981 (2008) ................................................ passim

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.,*
    637 F.3d 1047 (9th Cir. 2011) ..................................................... 15

*Camacho v. Automobile Club of Southern California,*
    142 Cal. App. 4th 1394 (2006) .............................................. 60, 61

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) ........................................................... passim

*Daugherty v. American Honda Motor Co.,*
    144 Cal. App. 4th 824 (2006) ................................... 35, 55, 56, 57

# TABLE OF AUTHORITIES
## (continued)

Page

*Ellison v. Shell Oil Co.*,
  882 F.2d 349 (9th Cir. 1989) ...................................................... 41

*Farmers Ins. Exch. v. Superior Court*,
  2 Cal. 4th 377 (1992) ................................................................ 55

*Flores v. San Diego County*,
  206 F.3d 845 (9th Cir. 2000) ...................................................... 16

*Franklin Nat'l Bank v. New York*,
  347 U.S. 373 (1954) ............................................................. 23, 24

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ........................................................ 38

*Goodman v. Kennedy*,
  18 Cal. 3d 335 (1976) ................................................................ 49

*Great W. Res., LLC v. Bank of Ark., Nat'l Ass'n*,
  2006 WL 626375 (W.D. Ark. March 13, 2006) .................... 32, 33

*Gutierrez v. Wells Fargo Bank, N.A.*,
  730 F. Supp. 2d 1080 (N.D. Cal. 2010) ................................ 32, 33

*Haskell v. Time, Inc.*,
  857 F. Supp. 1392 (E.D. Cal. 1994) ........................................... 56

*Hedlund v. Superior Court*,
  34 Cal. 3d 695 (1983) ................................................................ 42

*Hood v. Santa Barbara Bank & Trust*,
  143 Cal. App. 4th 526 (2006) ................................................ 32, 33

*Huggins v. Longs Drug Stores Cal., Inc.*,
  6 Cal. 4th 124 (1993) ................................................................ 41

*In re Checking Account Overdraft Litigation*,
  694 F. Supp. 2d 1302 (S.D. Fla. 2010) .................................. 32, 33

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Checking Account Overdraft Litigation*,
  797 F. Supp. 2d 1312 (S.D. Fla. 2011).....................................32, 33

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008).......................................................38

*Jimenez v. Superior Court*,
  29 Cal. 4th 473 (2002).................................................................45

*Jordan v. Paul Financial, LLP*,
  745 F. Supp. 2d 1084 (N.D. Cal. 2010) .......................................26

*Karoutas v. Homefed Bank*,
  232 Cal. App. 3d 767 (1991)........................................................46

*Kilgore v. Keybank*,
  712 F. Supp. 2d 939 (N.D. Cal. 2010)..........................................60

*Knarston v. Manhattan Life Ins. Co.*,
  140 Cal. 57 (1903)........................................................................39

*Krantz v. BT Visual Images*,
  89 Cal. App. 4th 164 (2001).........................................................55

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011).................................................................51

*La Jolla Village Homeowners' Ass'n, Inc. v. Superior Court*,
  212 Cal. App. 3d 1131 (1989)......................................................45

*Lawrence v. Bank of America*,
  163 Cal. App. 3d 431 (1985).........................................................44

*Lazar v. Hertz Corp.*,
  69 Cal. App. 4th 1494 (1999).......................................................55

*Linear Tech. Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (2007).......................................................49

## TABLE OF AUTHORITIES
### (continued)

Page

*Lovejoy v. AT&T Corp.*,
119 Cal. App. 4th 151 (2004)........................................................49

*Lozano v. AT&T Wireless Servs., Inc.*,
504 F.3d 718 (9th Cir. 2007).....................................58, 59, 60, 61

*Lyons v. Bank of America, N.A.*,
2011 WL 3607608 (N.D. Cal. Aug. 15, 2011)...........................60

*Machado v. Superior Court*,
148 Cal. App. 4th 875 (2007)........................................................60

*Martinez v. Wells Fargo Home Mortg., Inc.*,
598 F.3d 549 (9th Cir. 2010)............................................23, 24, 25

*Mehta v. Wells Fargo Bank, N.A.*,
737 F. Supp. 2d 1185 (S.D. Cal. 2010).......................................41

*Mktg. West, Inc. v. Sanyo Fisher (USA) Corp.*,
6 Cal App. 4th 603 (1992)............................................................49

*Montgomery v. Bank of Am. Corp.*
515 F. Supp. 2d 1106 (C.D. Cal. 2007).......................................25

*Muehlbauer v. General Motors Corp.*,
431 F. Supp. 2d 847 (E.D. Ill. 2006)...........................................35

*Nationsbank of N.C., N.A. v. Variable Annuity Life Ins. Co.*,
513 U.S. 251 (1995) .....................................................................20

*Norkin v. U.S. Fire Ins. Co.*,
237 Cal. App. 2d 435 (1965)........................................................50

*Nussbaum v. Weeks*,
214 Cal. App. 3d 1589 (1989).........................................44, 45, 46

*Pashley v. Pacific Elec. Ry. Co.*,
25 Cal. 2d 226 (1944)...................................................................44

# TABLE OF AUTHORITIES
## (continued)

Page

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) .................................................. 16, 42

*Rose v. Chase Bank USA, N.A.*,
513 F.3d 1032 (9th Cir. 2008) ....................................................... 30

*Shroyer v. New Cingular Wireless Services, Inc.*,
622 F.3d 1035 (9th Cir. 2010) ................................................. 59, 60

*Smith v. Wells Fargo Bank, N.A.*,
135 Cal. App. 4th 1463 (2005) ................................................. 32, 33

*Steckman v. Hart Brewing Inc.*,
143 F.3d 1293 (9th Cir. 1998) ....................................................... 38

*Toumajian v. Frailey*,
135 F.3d 648 (9th Cir. 1998) ......................................................... 15

*Troyk v. Farmers Group, Inc.*,
171 Cal. App. 4th 1305 (2009) ...................................................... 52

*Warner Constr. Corp. v. City of Los Angeles*,
2 Cal. 3d 285 (1970) ...................................................................... 45

*Watters v. Wachovia Bank, N.A.*,
550 U.S. 1 (2007) .................................................................... 19, 29

*Wells Fargo Bank N.A. v. Boutris*,
419 F.3d 949 (9th Cir. 2005) ......................................................... 33

*Western Mining Council v. Watt*,
643 F.2d 618 (9th Cir. 1981) ......................................................... 42

*White v. Wachovia Bank, N.A.*,
563 F. Supp. 2d 1358 (N.D. Ga. 2008) .................................... 32, 33

*WYDA Assoc's. v. Merner*,
42 Cal. App. 4th 1702 (1996) ........................................................ 40

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Wyler Summit Partnership v. Turner Broadcasting System, Inc.*,
    135 F.3d 658 (9th Cir. 1998) ........................................................ 39

**STATUTES**

12 U.S.C. § 24 (Seventh) .................................................... 19

15 U.S.C. § 45(a) ................................................................ 61

28 U.S.C. § 1291 ................................................................. 4

28 U.S.C. § 1332(d)(2)(A) .................................................. 4

Cal. Bus. & Prof. Code § 17200 ................................... 5, 50

Cal. Bus. & Prof. Code § 17204 ....................................... 51

Cal. Civ. Code § 1102 ....................................................... 46

Cal. Civ. Code § 1710 .................................................. passim

Cal. Civ. Code § 1750 ......................................................... 5

Cal. Civ. Code § 1770 ....................................................... 35

Cal. Civ. Code § 1770(a)(5) ............................................. 40

Cal. Civ. Code § 1770(a)(14) ........................................... 40

**RULES**

Fed. R. Civ. P. 12(c) ...................................................... 5, 15

**REGULATIONS**

12 C.F.R. § 7.4002(a) .................................................. 19, 20

12 C.F.R. § 7.4007 ............................................................ 25

12 C.F.R. § 7.4007(b)(3) ............................................. passim

12 C.F.R. § 7.4007(c)(2) ..................................................... 4

## TABLE OF AUTHORITIES
### (continued)

**Page**

76 Fed. Reg. 43,549, 43557 (July 21, 2011) ..................................... 24

## OTHER AUTHORITIES

5 Witkin, Summary of Cal. Law (9th ed. 1988)............................... 44

## **INTRODUCTION**

Plaintiff-appellant Tyrone Robinson ("Robinson") entered into a written agreement with defendant-appellee Bank of America, N.A. ("BANA") whereby BANA operated an account for Robinson and, in return, Robinson paid a $1.50 monthly maintenance fee.  BANA maintained Robinson's account, and Robinson paid the maintenance fee—just as the agreement between them provided.  Robinson admits that he was advised of the fee and agreed to pay it.  Which makes the existence of this lawsuit all the more puzzling:  Robinson alleges three claims under California law (for fraud by omissions, for omitting to make disclosures under California's Consumer Legal Remedies Act, and for unfair competition under California's Unfair Competition Law) because BANA did exactly what the parties' agreements provided.

The District Court dismissed Robinson's claims on the pleadings, finding them preempted by the National Bank Act ("NBA").  To facilitate a national banking system, Congress granted banks the power to operate without regard to any state-law disclosure requirements.  Because Robinson's claims are all based on BANA's alleged failure to disclose certain facts, they are all preempted by the

NBA.  The District Court so found, and its reasoning is sound.

The crux of Robinson's lawsuit is that BANA had an unadvertised practice of reducing or waiving the monthly maintenance fee for customers with less than $1.50 remaining in their accounts at the time BANA collected the monthly maintenance fee—even though BANA had the contractual right to charge the full fee.  No good deed goes unpunished.  Robinson argues that if he had known of BANA's forbearance from asserting its rights, he could have drawn his account down to zero each month (by spending or withdrawing all of his money) and thereby "avoided" paying the monthly maintenance fee—even though he acknowledges both that BANA still would have had the right to charge the fee and he had agreed to pay it.

Even assuming California law somehow required BANA to disclose to Robinson a benefit he had no right to receive, the District Court correctly held that the NBA preempts such laws.

Further, while the District Court did not reach the merits of Robinson's claims, California law requires no such thing.  Companies can provide discounts, exceptions, or special deals to some customers without being required to disclose to all other customers the existence of those discounts, exceptions, or special deals.  It happens every day,

for all sorts of reasons. And it is perfectly lawful.

Perhaps the most surprising thing about Robinson's lawsuit is that it is not novel. In a nearly identical factual scenario, a California appellate court logically found that it was lawful for a business to not disclose to consumers that it discounted bills in certain circumstances. *See Buller v. Sutter Health*, 160 Cal. App. 4th 981 (2008). In *Buller,* similar to here, the plaintiff complained of not receiving a discount provided to other customers, alleging that "[t]here is no information . . . which would lead a reasonable consumer . . . to seek the discount, or discern that the prompt-pay discount is available to all who pay promptly." *Id*. at 985. The *Buller* court rejected the very notion of that claim: "While we sympathize with appellant's frustration over his failure to benefit from respondents' discount policy, when viewed from the standpoint of consumers in general we believe respondents' practice is beneficial rather than harmful, inasmuch as they apparently are not required to offer . . . any discounts whatsoever." *Id.* at 992.

The Court should reach the same conclusion here. California law does not require the disclosures Robinson seeks, and even if it did, it would be preempted by the NBA. The District Court correctly dismissed Robinson's claims, and BANA respectfully requests that its

judgment of dismissal be affirmed.

## JURISDICTIONAL STATEMENT

The federal courts have subject matter jurisdiction over this dispute pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A). This Court has appellate jurisdiction, pursuant to 28 U.S.C. § 1291, over the District Court's final judgment, which was entered on November 22, 2011, in favor of BANA. (I Excerpts of Record ("ER") 2.)

## STATEMENT OF ISSUES

1.     Whether Robinson's specific applications of state-law claims for fraud by omissions, violation of California's Consumer Legal Remedies Act, and violation of California's Unfair Competition Law fall within the preemptive scope of 12 C.F.R. § 7.4007(b)(3).

2.     Whether, assuming Robinson's claims fall within the preemptive scope of Section 7.4007(b)(3), they are somehow excepted from preemption by Section 7.4007(c)(2).

3.     Whether, assuming Robinson's claims are not preempted by the National Bank Act, Robinson has alleged facts sufficient to constitute a cause of action under California law with respect to each of his three causes of action.

## STATEMENT OF THE CASE

Robinson filed this action in the Superior Court of the State of California for the County of Los Angeles. (II ER 52.) BANA removed the action to the District Court pursuant to the Class Action Fairness Act. (*Id.* at 44.)

Robinson's Complaint alleges three claims for: (1) fraud by omissions, California Civil Code § 1710; (2) deceptive practices under California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"); and (3) unfair business practices under the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"). (II ER 52.)

BANA filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, which the District Court granted. (I ER 2.) United States Magistrate Judge John E. McDermott made findings and recommendations that the action be dismissed and United States District Court Judge George H. King agreed. Judge King dismissed each of Robinson's claims with prejudice on the grounds that "the National Bank Act of 1864 (the 'NBA'), 12 U.S.C. § et seq., and its implementing regulations, in

particular 12 C.F.R. § 7.4007(b)(3), preempt [Robinson's] state law causes of action."  (I ER 4.)

BANA alternatively argued in its motion that Robinson's causes of action failed to state any claim for relief under California law.  Because the District Court found BANA's preemption claim to be "dispositive," it did not decide that issue.  (I ER 6, n.1; Defendant-appellee's Supplemental Excerpts of Record ("Supp. ER") 1-27.) This appeal followed.

## STATEMENT OF FACTS[1]

Robinson brings this lawsuit as a customer of BANA, alleging that BANA should be held liable because it performed services for Robinson and charged him fees for those services *in accordance with the terms of the parties' written agreement*.  (Complaint ¶ 6; II ER 53-54.)  While acknowledging his agreement with BANA, Robinson claims he should receive a refund of fees he paid because BANA did not collect those fees from certain other customers.  (*Id.* at 52-53.) Those customers, like Robinson, agreed to pay the fees, but lacked money in their accounts to do so.  (*Id.* at ¶ 6; II ER 54.)  Rather than

---

[1] Facts taken from Robinson's Complaint are assumed to be true solely for purposes of BANA's motion for judgment on the pleadings and this appeal.

prosecute some kind of collection action against those customers, BANA reduced or waived their fees.

###    A.    Background Facts Regarding BANA's CashPay Card Service.

This action relates to BANA's "CashPay card" program. The CashPay card is a payroll debit card. Employees of participating companies can choose, in lieu of receiving an ordinary paycheck, to have their compensation directly deposited onto a CashPay card, which can be used like a credit or ATM card. (Complaint, Ex. 2; II ER 66-77 ("CashPay Card Guide").) The CashPay card is an *optional* benefit for those employees who find the card more convenient than dealing with paper checks or direct deposit into bank accounts. (*Id.*) Robinson, while employed at U-Haul, voluntarily chose to be paid through the CashPay card program. (Complaint ¶ 6; II ER 53-54.)

Materials relating to the CashPay card provide consumers (including Robinson) with general information about the card and inform consumers of the terms and conditions of the card. (*See* Complaint, Ex. 2; II ER 66-77 ("CashPay Card Guide"); Complaint, Ex. 3; II ER 78-89 ("Terms & Conditions"); Complaint, Ex. 4; II ER 90-91 ("CashPay Schedule of Fees"); Complaint, Ex. 5; II ER 92-96 ("[CashPay] Cardholder Frequently Asked Questions").) Notably,

Robinson attached all of these materials as exhibits to his Complaint.
(II ER 44-101.)

These materials disclose that, as relevant here, CashPay account
holders are charged a monthly maintenance fee of $1.50. (II ER 66-
77, 78-89, 90-91.) The Terms & Conditions make clear that as a
CashPay account holder, "[y]ou agree to pay all fees listed in the Fee
Schedule." (Complaint, Ex. 3; II ER 82.)

### B. Robinson Was Obligated To Pay A Monthly Maintenance Fee For BANA's CashPay Card Service.

Robinson admits in his Complaint that, "[p]rior to activating his
CashPay account, Plaintiff read and agreed to abide by [BANA's]
written terms and conditions for having a CashPay account which
indicate that [BANA] charges a monthly maintenance fee."
(Complaint ¶ 6; II ER 54.) In accordance with the parties' written
agreement, Robinson actually paid the maintenance fee of $1.50
"when Plaintiff maintained a sufficient balance in his CashPay
account." (*Id.*)

According to Robinson, this action arises out of the "failure of
[BANA] to disclose that account maintenance fees charged to
consumers who have a CashPay account with [BANA] (i.e.,
consumers who get a CashPay card) can be avoided by going to a

branch location and withdrawing funds from their CashPay account."
(Complaint ¶ 1; II ER 52-53.)  The parties' agreements do not provide
for such a right—and Robinson does not contend otherwise.
(Complaint ¶ 6; II ER 54.)

Instead, Robinson claims he is entitled to a refund of his fees
because, in practice, BANA did not charge fees to other customers
who did not maintain sufficient funds in their account to pay the fee at
the time that BANA collected it.  BANA's forbearance with respect to
such customers, however, does not affect its right to charge fees to
customers, like Robinson, who had sufficient funds in their account to
pay BANA.  Significantly, the CashPay materials specifically advised
Robinson and other customers that "you are not entitled to any rights
or benefits given to other deposit account customers or debit card
holders at Bank of America unless such rights or benefits are
contained in this Agreement."  (Complaint, Ex. 3; II ER 79.)

> **C.     While Robinson Could Have, As A Practical Matter, Withdrawn Cash From Bank Branches And Avoided The Monthly Maintenance Fee, He Had No Right To Do So.**

While Robinson acknowledges that he had no contractual right
to avoid the fee, he claims he should receive a refund because he did
not know that, as a practical matter, he could do so by going to a bank

branch and withdrawing all of his money so as to avoid BANA's

collection thereof.  (*Id.* at 52-54.)  This allegation raises two issues:

      First, the Terms & Conditions explicitly inform CashPay

Cardholders that they can go to bank branches, including BANA bank

branches, to obtain cash.  (*Id.* at 81.)  The Terms & Conditions

explain:  "Offices of financial institutions that accept Visa cards,

including our offices, will accept your Card *for obtaining cash*.  These

cash transactions are subject to the Cash Access Fee stated in the Fee

Schedule."[2]  (*Id.* (emphasis added).)  Robinson claims to be confused

by a separate provision in the Terms & Conditions stating CashPay

customers could not receive customer service at bank branches.

(Complaint, Ex. 5; II ER 95.)  In context, however, "customer

service" clearly refers to things like card activation, PIN selection and

changes, balance inquiries, and changing user information—not to

withdrawing cash.

---

[2] There are different types of CashPay cards, and only cards bearing the Visa symbol can obtain cash from bank branches.  (*Id.*)  Although Robinson does not specify the type of card he had, his other allegations make clear it was a Visa branded card because he was charged a $1.50 monthly maintenance fee.  (*See id*. at 54, Ex. 1.) Cardholders with cards not bearing the Visa symbol were charged a $2.00 monthly maintenance fee.  (*See id.* at 88.)

Second, the Terms & Conditions did *not* advise Robinson that if he withdrew all his cash, he could avoid paying the monthly maintenance fee—because *that was not a term of the parties' agreement*.  (*Id.*; *see also* Complaint ¶ 6; II ER 54.)  BANA's unilateral decision not to charge fees to such customers was simply a waiver of its right to do so, not a substantive right that customers actually had, as evidenced by the fact that BANA could have discontinued that practice (and sought recovery of the fee from the CashPay customer) at any time.

In sum, Robinson complains that BANA did not advise him how he could game the system and avoid paying fees he agreed to pay.  This action raises the question whether, under the National Bank Act and/or California law, BANA had some obligation to inform Robinson how he could take unfair advantage of BANA's forbearance from collecting fees from individuals with no money in their accounts.  The answer to that question is a resounding no.

SUMMARY OF ARGUMENT

The District Court properly dismissed Robinson's claims with prejudice.

All of Robinson's claims are preempted by the National Bank

Act.  The NBA specifically grants each national bank, including

BANA, the right to "exercise its deposit-taking powers without regard

to state law limitations concerning . . . disclosure requirements."  12

C.F.R. § 7.4007(b)(3).  Each of Robinson's claims—for fraud *by*

*omissions*, under the disclosure requirements of California's

Consumer Legal Remedies Act, and under California's derivative

Unfair Competition law—seeks to hold BANA liable for failing to

"disclose"  to Robinson a way that he could avoid paying the very

fees he had agreed to pay.  The NBA preempts those claims.

Robinson twists himself in knots trying to argue that holding a

bank liable for not disclosing information somehow does not run afoul

of the NBA's preemption of disclosure requirements.  For example,

Robinson asserts:  "While the gist of a claim for deceit under Section

1710(3) is a 'failure to disclose', Section 1710(3) does not require that

a disclosure be made or impose any obligation to disclose."  (Plaintiff-

appellant's Opening Brief ("Op. Br.") 14.)  If that is a distinction at

all, it is a distinction without a difference.  Regardless of whether

Robinson's state law claims are laws of "general application,"

Robinson's specific *application* of those laws conflicts with federal

law.  While claims under the CLRA, UCL, and common law fraud

may not always be preempted by the NBA, because of the manner in which Robinson is pleading them here (as claims of a failure to disclose) those claims are clearly preempted.

Nor are Robinson's claims "saved" from preemption by 12 C.F.R. § 7.4007(c)(2). Contrary to Robinson's contention, Section 7.4007(c)(2) does not exclude all tort claims from preemption, but only those that do not interfere with rights granted to banks by the NBA. Here, the NBA expressly grants to BANA the right to operate "without regard to state law limitations concerning disclosure requirements." 12 C.F.R. § 7.4007(b)(3). Robinson's tort claims—seeking recovery for a failure to disclose—would interfere with that right, and are preempted. This Court's decisions reject Robinson's reading of Section 7.4007(c)(2) as an exception that swallows the rule of NBA preemption.

In addition to being preempted by the NBA, Robinson's claims all fail on the merits.

Robinson's Complaint—in specifically complaining of fraud by omissions, CLRA violations based on omissions, and UCL violations based on omissions—does not even allege any affirmative misrepresentation by BANA. Robinson nevertheless argues in his

brief that BANA affirmatively misrepresented either that customers were required to pay fees or that they could not obtain customer service at bank branches (specifically, withdrawing cash to avoid fees).  Those are not misrepresentations—those are the terms of the agreement.  Even if BANA sometimes waived those terms, such a waiver in no way converts the terms of the agreement into misrepresentations.

Robinson's complaints of omissions similarly fail.  BANA had no duty to advise Robinson of ways in which he could game the system to avoid paying fees that he agreed, and was contractually obligated, to pay.  It is true that companies sometimes waive contractual provisions, such as by waiving or discounting certain fees for certain customers.  It is also true that BANA did so here, unilaterally for some customers in some instances.  From that discretionary action, Robinson purports to divine the legal conclusion that BANA had some obligation to disclose those waivers to Robinson so that he too could take advantage of them.  But as a matter of law, there is no such obligation.  And as a matter of policy, imposing such an obligation would harm consumers—punishing companies that waive provisions in consumers' favor will only discourage those

companies from ever doing so.

The District Court correctly dismissed this action. Robinson agreed to pay monthly fees for the CashPay service. He received that service and, to state the obvious, was not harmed by paying the fees he agreed to pay. The fact that BANA sometimes waived those fees—continuing to provide other customers with comparable service for lower fees or no fee during some months—was good business and the right thing to do. Not a reason for Robinson to sue. BANA respectfully requests that the District Court's judgment of dismissal be affirmed.

## STANDARD OF REVIEW

A district court's decision to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(c) is subject to *de novo* review. *See Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1052 (9th Cir. 2011).

A district court's decision regarding preemption is also subject to *de novo* review. *See Aguayo v. U.S. Bank*, 653 F.3d 912, 917 (2011); *Bank of Am. v. City & County of S.F.*, 309 F.3d 551, 557 (9th Cir. 2002) ("*Bank of America*"); *Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir. 1998) ("[P]reemption is also a question of law reviewed

*de novo*.")).

This Court may affirm the District Court's dismissal on any basis fairly supported by the record, even if the District Court relied on other grounds or different reasoning in rendering its decision. *See, e.g.*, *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007); *Flores v. San Diego County*, 206 F.3d 845, 847 (9th Cir. 2000).

## STATEMENT OF ARGUMENT

Robinson's lawsuit follows in the footsteps of the plaintiff in *Buller*, 160 Cal. App. 4th 981, where a customer sued a company based on its "undisclosed policy of allowing a 10 to 44% discount if a patient's bill is paid within a specified period of time, typically 30 or 60 days.  [They] do not disclose this prompt-pay discount.  It is hidden and does not appear on the face of the bill." *Id.* at 984.  The company in that case, like BANA here, doubtless expected that no one could or would complain about it offering a discount to some customers.  But, again, no good deed goes unpunished.  Just like Robinson, the plaintiff in *Buller* did not receive that discount, and they both were so upset by that fact that they brought expensive, time-

consuming, and ultimately wasteful litigation under California's consumer-protection laws.

Here, as the District Court found, Robinson's claims are preempted by the NBA. Even assuming California law purported to impose on banks an obligation to disclose discounts they offer to other customers—which it clearly does not—any such California law would be preempted. The NBA gives BANA the right to charge fees without regard to state law requirements regarding disclosures. The District Court's judgment may be affirmed for that reason alone.

Further, as in *Buller*, Robinson fails to state any claim. As *Buller* explains, "it is fairly common for consumers to ask for and receive discounts on products and services. . . . While we sympathize with appellant's frustration over his failure to benefit from respondents' discount policy, when viewed from the standpoint of consumers in general we believe respondents' practice is beneficial rather than harmful, inasmuch as they apparently are not required to offer privately insured patients any discounts whatsoever." *Id.* at 991-92.

Here, Robinson was a BANA "CashPay" card customer. (Complaint ¶ 6; II ER 53-54.) As such, he quite specifically agreed to

pay a $1.50 monthly maintenance fee for the use of a CashPay account—the full price.  (*Id.*)  BANA had a practice, however, of reducing or waiving the fees for customers with less than $1.50 remaining in their accounts at the time BANA collected the fee— which amounts to a discount.  (*Id.*)  Robinson complains that none of the materials relating to CashPay accounts disclose this practice.  (*Id.*)  The reason for that is quite simple.  BANA makes no such disclosure because that is not the agreement.  CashPay customers are obligated to pay the fee even if they cannot afford to do so or the funds in their account are insufficient to do so; BANA simply has a practice of reducing or waiving the fee in such circumstances.

As in *Buller*, the non-disclosure of this benefit to consumers, which they have no contractual right to receive, is not unlawful. Robinson's only response to *Buller* is that in *Buller*, "the plaintiff did not allege that the defendant had a duty to disclose that it gave discounts to consumers who paid their bills promptly."  (Op. Br. 29-30.)  But Robinson similarly has alleged no such duty here.  Put simply, companies have no obligation to advise their customers that, in certain circumstances, other customers are getting better deals. "Indeed, taken to their logical conclusion, [plaintiff's] arguments

would effectively require a business to disclose all discretionary discounts it might offer." *Buller*, 160 Cal. App. 4th at 992. As *Buller* explains, and as common sense dictates, that is not the law. Accordingly, the District Court correctly dismissed Robinson's claims.

## I.   Robinson's State Law Claims Are Preempted By The National Bank Act.

The District Court dismissed all of Robinson's claims on the basis of NBA preemption. The NBA grants banks the power to exercise all "incidental powers as shall be necessary to carry on the business of banking," 12 U.S.C. § 24 (Seventh), which includes the right to charge fees for services. *See* 12 C.F.R. § 7.4002(a) ("A national bank may charge its customers non-interest charges and fees, including deposit account service charges."). BANA is a national bank subject to the NBA (*See* BANA's Articles of Association (Supp. ER 28-36)), and, therefore, BANA has the right to charge "non-interest charges and fees," including the monthly maintenance fee at issue here.

Any state law that purports to restrict a bank's right to charge fees is preempted. *See generally Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007) ("In the years since the NBA's enactment, we

have repeatedly made clear that federal control shields national banking from unduly burdensome and duplicative state regulation."); *Bank of America*, 309 F.3d at 563-64 ("Regulations § 7.4002(a) authorizes national banks to collect 'non-interest charges and fees.' We hold that the National Bank Act and OCC[3] regulations together preempt conflicting state limitations on the authority of national banks to collect fees . . . .") (citing 12 C.F.R. § 7.4002(a)).

Significantly, the NBA not only gives BANA the right to charge the monthly maintenance fee, but specifically gives it the right to do so without regard to state laws dictating how it must disclose that fee. 12 C.F.R. § 7.4007(b)(3) provides: "[a] national bank may exercise its deposit-taking powers *without regard to state law limitations* concerning . . . disclosure requirements." (emphasis added). Accordingly, any state law that purports to impose disclosure requirements on BANA regarding its fees is preempted.

---

[3] The "OCC" is the Office of the Comptroller of the Currency, which "bears primary responsibility for surveillance of 'the business of banking' authorized by § 24 Seventh." *Nationsbank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256 (1995).

### A. Robinson's Claims Fall Within The Preemptive Scope Of Section 7.4007(b)(3).

#### 1. The District Court Correctly Held That Robinson's State Law Claims Purport To Impose "Disclosure Requirements" On BANA.

The District Court correctly found that because Robinson's three claims all purport to impose "disclosure requirements" on BANA they are preempted. *See* 12 C.F.R. § 7.4007(b)(3).

As this Court recently explained, "[t]he term 'disclosure' is commonly used to refer to an informational statement of terms prior to entering a transaction . . . ." *Aguayo*, 653 F.3d at 926. That is precisely what is at issue here. (*See* Complaint, Ex. 2; II ER 66-77 ("CashPay Card Guide"); Ex. 3; II ER 78-89 ("Terms & Conditions"); Ex. 4; II ER 90-91 ("CashPay Schedule of Fees"); Ex. 5; II ER 92-96 ("[CashPay] Cardholder Frequently Asked Questions"); *see also* District Court's Order (I ER at 11) ("Here the written documents explaining the terms for Cash Pay account cardholder agreements . . . obviously fit Aguayo's definition of disclosure under § 7.400(b)(3)).")

The above-cited documents (attached to Robinson's Complaint) make clear that CashPay cardholders are obligated to pay a monthly maintenance fee. Robinson does not argue to the contrary. Instead, he alleges that BANA should be held liable because the disclosures do

not specifically inform customers that, in practice, BANA has chosen

to reduce or waive the monthly maintenance fee for customers whose

accounts lack sufficient funds from which to collect it. (Complaint ¶

6; II ER 53-54.) Thus, Robinson concludes, the monthly maintenance

fee could be "avoided"—and his contractual obligation abrogated—by

withdrawing the full balance of the account each month before the fee

was due to be collected. (*Id.*) Robinson alleges that BANA had some

obligation to "disclose" that he could have avoided paying fees he

agreed to. (*See e.g.*, Complaint ¶ 16; II ER 57-58; Complaint ¶ 24-25;

II ER 59-60; Complaint ¶ 32; II ER 61.) But that attempts to impose

disclosure requirements on BANA. Thus, Robinson's claims fall

squarely within 12 C.F.R. § 7.4007(b)(3).

Robinson's attempts to avoid this conclusion are puzzling.

Robinson repeatedly states that Section 7.4007(b)(3) only applies to

laws that "dictate the content or form of information statements"—but

that is precisely what Robinson's claims attempt to do. As the District

Court explained, "[t]he gist of each of Plaintiff's state law claims is

that [BANA] failed to disclose adequately that its monthly

maintenance fee could be avoided." (I ER 7.) Specifically:

> Plaintiff's First Cause of Action for fraud by omission
> asserts that [BANA] had a duty to disclose that

> consumers could avoid the monthly account maintenance
> fees and failed to do so.  The Second Cause of Action
> asserts that [BANA]'s failure to disclose that consumers
> can avoid monthly account maintenance fees is a
> deceptive practice under the CLRA.  The Third Cause of
> Action alleges that [BANA]'s failure to disclose that
> consumers can avoid monthly account maintenance fees
> constitutes fraudulent, unlawful and unfair business
> practices under the UCL.

(I ER 7-8 (citations to Complaint omitted); *see also* Op. Br. 4 (BANA

"fails to disclose to consumers that they can avoid CashPay account

maintenance fees . . . .").)  All of these claims purport to dictate the

content or form of BANA's disclosures, and are preempted.

## 2.     It Is Irrelevant That Robinson's Claims Are Based On Laws Of General Application That Do Not Necessarily Require Disclosures.

On appeal, Robinson argues that, because his state law claims

"do not impose any kind of affirmative obligations, either in general

or with respect to information statements in particular, they are not

'disclosure requirements.'"  (Op. Br. 11.)  Robinson is incorrect.  As

the United States Supreme Court's decision in *Franklin Nat'l Bank v.*

*New York*, 347 U.S. 373 (1954), and this Court's decision in *Martinez*

*v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549 (9th Cir. 2010), make

clear, Section 7.4007(b)(3)'s breadth extends to state laws that do not

specifically target banks, but nevertheless purport to impose disclosure requirements when applied to banks.[4]

First, contrary to Robinson's argument, a law need not impose an affirmative requirement on a bank for it to impose a "disclosure requirement" on that bank. In *Franklin Nat'l Bank*, the Supreme Court held that the NBA and the Federal Reserve Act preempted a New York law that prohibited the use of the word "savings" in advertisements of bank services. 347 U.S. at 378. "The law imposed no affirmative requirements on banks . . . [n]or were there any costs associated with compliance with the law." *Am. Bankers Ass'n v. Lockyer*, 239 F. Supp. 2d 1000, 1017 (E.D. Cal. 2002) (explaining the holding in *Franklin Nat'l Bank*). Yet the state law was preempted.

Second, *Martinez* rejects Robinson's argument that laws of "general application" cannot be preempted by the NBA. 598 F.3d 549. In *Martinez*, this Court held that while "[s]tate laws of general application, which merely require all businesses (including national banks) to refrain from fraudulent, unfair, or illegal behavior do not

---

[4] Further, the OCC has observed, "the principles of preemption articulated in the *Barnett [Bank of Marion County N.A. v. Nelson, Florida Insurance Commissioner, et al*., 517 U.S. 25 (1996)] decision apply to questions concerning the *application of all types of state laws to national banks*." 76 Fed. Reg. 43,549, 43557 n.47 (July 21, 2011) (emphasis added).

*necessarily* impair a bank's powers, such state laws are preempted where they conflict with OCC regulations." *Id.* at 555-56 (emphasis added). It continued that "[t]he Martinezes' 'unfair' claim under the UCL is therefore preempted by the [NBA]." *Id.*

Here, as the District Court found, "Plaintiff's argument that the UCL and CLRA do not impose affirmative disclosure requirements or relate to disclosure of information or require any kind of disclosure miss the point" because "their application to a specific federal banking activity conflicts" with Section 7.4007(b)(3). (I ER 9.) *See also Montgomery v. Bank of Am. Corp.* 515 F. Supp. 2d 1106 (C.D. Cal. 2007) (finding that plaintiff's CLRA and UCL claims based upon defendants' alleged improper disclosure of defendants' fee structure were expressly preempted by 12 C.F.R. § 7.4007).

Robinson continues to "miss the point" in this appeal when he argues that his fraud *by omissions* claim is not preempted because California Civil Code § 1710 "does not require that a disclosure be made or impose any obligation to disclose." (Op. Br. 14.) As *Martinez* makes clear, although the tort of fraud does not, in and of itself, necessarily impose disclosure requirements on banks, a specific application of such a claim can. Here, there is little question but that

Robinson attempts to use fraud by omissions to impose a disclosure requirement on the bank (i.e., by requiring that BANA disclose that the monthly maintenance fee can be avoided).

On appeal, Robinson relies on the same arguments the District Court rejected below.  The cases Robinson cites for the proposition that the UCL does not relate to the disclosure of information involve an entirely different statute, the Truth in Lending Act, and do not relate to the NBA in any way.  For example, Robinson quotes out of context a passage from *Jordan v. Paul Financial, LLP*, 745 F. Supp. 2d 1084 (N.D. Cal. 2010); *see also* Op. Br. 12.  The entire quote states:  "[t]he UCL does not, on its face, relate to the disclosure of information in connection with credit transactions, let alone impose disclosure requirements that are different than [the Truth In Lending Act's] in any way."  *Id.* at 1098 (citation omitted).  But the question here is *not* whether the statutes on which Robinson's claims are based impose disclosure requirements on banks *on their face*.

As the District Court correctly found, "[w]hat matters . . . is not whether these general state laws were designed to regulate disclosures in deposit-taking, but whether their application to a specific federal banking activity conflicts with an NBA regulation or prevents or

- 26 -

interferes with an enumerated or incidental power granted by the

NBA." (I ER 9.) Because Robinson's claims for fraud by omissions

and violation of the CLRA and UCL purport to "impose a duty to

disclose and have the effect of regulating how [BANA] discloses its

fees," they are necessarily preempted by Section 7.4007(b)(3). (*See* I

ER 9-10.)

> **B.    Robinson's Claims Are Preempted Under Section 7.4007(b)(3), And Section 7.4007(c)(2) Does Not Alter That Conclusion.**

Despite the fact that Robinson's claims purport to impose

disclosure requirements on BANA under Section 7.4007(b)(3),

Robinson argues they are "saved" from preemption under Section

7.4007(c)(2). (Op. Br. 17-18.) Not so.

> **1.    The NBA Preempts Some Tort Claims.**

Robinson gives the impression in his Opening Brief that

Section 7.4007(c)(2) prohibits preemption of *all* torts. (*Id.*) That is

not the law. Where, as here, application of state law tort claims

directly conflicts with a power granted under the NBA, they simply

cannot be saved from preemption by Section 7.4007(c)(2).

Section 7.4007(c)(2) provides that "[s]tate laws on the

following subjects are not inconsistent with the deposit-taking powers

of national banks and apply to national banks to the extent consistent with the decision of the Supreme Court in *Barnett Bank of Marin County, N.A. v. Nelson, Florida Insurance Commissioner, et al.*, 517 U.S. 25 (1996): . . . (2) Torts . . . ."

The plain language of Section 7.4007(c)(2) makes clear, then, that not all torts are excepted from preemption—such an exception would swallow the rule of NBA preemption. Rather, torts are excepted from preemption only to the extent consistent with *Barnett Bank. Barnett Bank*, in turn, makes clear that state laws—even torts—are preempted if they are directly contrary to authority granted to a bank in the NBA. 517 U.S. 25. Such is the case here, and nothing in *Barnett Bank* saves Robinson's claims from preemption.

In *Barnett Bank*, the Supreme Court explained the cardinal rule of NBA preemption: state law may not prohibit what federal law permits. *Id.* at 30-37. In that case, a Florida state law prohibited banks from selling insurance, which was a power granted banks under the NBA. *Id.* at 27-28. Florida argued that the NBA merely permitted banks to sell insurance if state law otherwise allows, but the Supreme Court rejected that argument: "In defining the pre-emptive scope of statutes and regulations granting a power to national banks, these

cases take the view that normally Congress would not want States to forbid, or to impair significantly, the exercise of a power that Congress explicitly granted." *Id.* at 33.

By contrast, states may regulate national banks consistently with *Barnett Bank* "where (unlike here) doing so does not prevent or significantly interfere with the national bank's exercise of its powers." *Id.; see also Watters*, 550 U.S. at 12. "The import of this holding is that at the least state laws in direct conflict with the NBA laws and regulations are preempted, including state tort laws." (District Court's Opinion, I ER 10.)

Consistent with *Barnett Bank*, this Court has explained that the preemption clause (here, Section 7.4007(b)(3)) and the savings clause (here, Section 7.4007(c)(2)) must be read in harmony: "Viewing the regulation as a whole, [] the savings clause does not act independently. Instead, the savings clause is viewed in conjunction with the express preemption clause . . . ." *Aguayo*, 653 F.3d at 917. In *Aguayo*, this Court held that the savings clause applied while the express preemption clause did not. *Id.* at 919. But the reasoning of *Aguayo*—as the District Court's ruling made clear (I ER 11)—requires the opposite result here.

Any state law that would have the effect of imposing disclosure requirements on a bank directly conflicts with a right granted banks by the NBA—to exercise their deposit taking powers without regard to state disclosure laws. This is not a novel concept. *See, e.g., Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1037-38 (9th Cir. 2008) (holding that a California statute providing for liability based on the extension of "convenience checks" without adequate disclosures was preempted); *American Bankers Ass'n*, 239 F. Supp. 2d at 1014-1018 (finding that a mandatory disclosure scheme constituted a significant interference with national banks' powers under the NBA). Thus, Section 7.4007(c)(2) is inapplicable.

## 2.     Robinson's Tort Claims Are Preempted.

Robinson's claims purport to impose disclosure requirements on BANA in direct conflict with the NBA. The NBA explicitly grants BANA the right to "exercise its deposit-taking powers without regard to state law limitations concerning . . . disclosure requirements." 12 C.F.R. § 7.4007(b)(3). Robinson's claims purport to impose requirements that BANA disclose certain facts relating to its CashPay maintenance fees. (*See, e.g.,* Complaint ¶ 1; II ER 52-53.) Thus, Robinson's claims would "prevent or significantly interfere" with

BANA's authorization to "exercise its deposit-taking power without regard to state law limitations concerning . . . disclosure requirements" within the meaning of *Barnett Bank*. 517 U.S. at 33; *see also* District Court's Opinion, I ER 10-11. They are preempted.

Robinson asserts in his Opening Brief that "having to comply with the general California laws prohibiting fraud, deceptive practices and unfair competition . . . does not impair or interfere in any way with a bank's exercise of its deposit-taking powers." (Op. Br. 18-19.) That, once again, misses the point.

California law can prohibit banks from making false statements under general laws prohibiting fraudulent, deceptive, or unfair practices. But that is not what is at issue here. Robinson alleges fraud *by omission* and seeks to impose a specific disclosure requirement. In other words, Robinson claims that BANA was required to disclose something it did not. That specific application of California law runs afoul of the NBA, which grants banks the authority to charge fees "without regard to state law limitations concerning . . . disclosure requirements." 12 C.F.R. § 7.4007(b)(3). Simply put, at the point at which state law purports to restrict banks from operating in the manner guaranteed by the NBA, state law is preempted. *See Bank of*

*America*, 309 F.3d at 551 ("state attempts to control the conduct of national banks are void if they . . . frustrate the purposes of the National Bank Act, or impair the efficiency of national banks to discharge their duties").

The cases Robinson cites as support for his argument that his claims are not preempted are inapposite.

First, none of the cases are binding on this Court, as they were all decided by lower courts. *See Great W. Res., LLC v. Bank of Ark., Nat'l Ass'n*, 2006 WL 626375 (W.D. Ark. March 13, 2006); *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358 (N.D. Ga. 2008); *In re Checking Account Overdraft Litigation*, 694 F. Supp. 2d 1302 (S.D. Fla. 2010) ("*Checking Account Overdraft Litigation I*"); *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Cal. 2010); *In re Checking Account Overdraft Litigation*, 797 F. Supp. 2d 1312 (S.D. Fla. 2011) ("*Checking Account Overdraft Litigation II*"); *Hood v. Santa Barbara Bank & Trust*, 143 Cal. App. 4th 526 (2006); *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463 (2005).

Second, most of the cases were decided before Section 7.4007(c) was amended to add the *Barnett Bank* standard, and therefore, do not analyze the *Barnett Bank* standard when determining

whether a law falls within the savings clause.  *See Great W. Res., LLC*, 2006 WL 626375; *White*, 563 F. Supp. 2d 1358; *Gutierrez*, 740 F. Supp. 2d 1080; *Hood*, 143 Cal. App. 4th 526; *Smith*, 135 Cal. App. 4th 1463.

Third, Robinson's authorities are distinguishable.  In *Checking Account Overdraft Litigation I* and *II*, the court explained that the bank could follow both the NBA and the state laws at issue because "these principals [*sic*] are not in irreconcilable conflict."  *Checking Account Overdraft Litigation I*, 694 F. Supp. 2d at 1313; *Checking Account Overdraft Litigation II*, 797 F. Supp. 2d at 1319.  Here, however, Robinson's state law claims are incompatible with the NBA because they directly conflict with the NBA's authorization to charge fees without yielding to state law limitations regarding disclosure requirements.

Fourth, Robinson's authorities apply the wrong standards.  At least two of the cases Plaintiff cites, *Smith*, 135 Cal. App. 4th at 1475-76, and *Hood*, 143 Cal. App. 4th at 537-38, are state-law decisions applying a presumption against preemption, which is contrary to Ninth Circuit precedent.  *See Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 956 (9th Cir. 2005) ("the usual presumption against federal

preemption of state law is inapplicable to federal banking regulation"); *see also Bank of America*, 309 F.3d at 558 ("the usual presumption against federal preemption of state law is inapplicable to federal banking regulation").  California state courts' hostility to issues of federal preemption has no place here.

Finally, and perhaps most importantly, none of the cases Plaintiff cites deals with the question presented here—whether a state law may require a bank to disclose its unilateral and voluntary waiver of its right to collect fees against certain customers, so that other customers can avoid paying fees they are contractually obligated to pay.  As discussed in detail below, California law does not actually impose such a requirement.  But if it did, California law would be preempted by the NBA because it would interfere with banks' ability to charge fees without regard to state-law disclosure requirements.

## II.    Robinson's Claims Fail As A Matter Of Law.

Like the District Court below, this Court can avoid any decision regarding issues of state law by affirming the judgment on the grounds that Robinson's claims are preempted by the NBA.  Even if the Court reaches the merits of Robinson's claims, however, the judgment of dismissal should still be affirmed on the grounds that

Robinson's Complaint fails to state facts sufficient to constitute any cause of action under California law.

### A. Robinson Fails To State A Claim Under The Consumer Legal Remedies Act.

The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices" in transactions for the sale or lease of goods or services to consumers. Cal. Civ. Code § 1770. To state a claim under the CLRA, Robinson must allege either an affirmative misrepresentation or a fraudulent omission in circumstances giving rise to a duty to make an affirmative statement. *See Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (2006); *Bardin v. DiamlerChrysler Corp.*, 136 Cal. App. 4th 1255 (2006) (plaintiffs failed to state a claim for violation of the CLRA because they alleged neither any affirmative representation nor any omission of any fact that the defendant had a duty to disclose); *see also Muehlbauer v. General Motors Corp.*, 431 F. Supp. 2d 847 (E.D. Ill. 2006) (dismissing CLRA claim based on omission because of failure to plead duty to disclose).

The CLRA does not, contrary to Robinson's allegations, prohibit companies from charging exactly what customers agreed to pay—even if, as a practical matter, the companies reduce or waive

their fees for certain other customers.  Nor, contrary to Robinson's

allegations, does the CLRA require companies to disclose to all

customers the circumstances under which they have waived fees for

others, so that paying customers can try to avoid paying agreed-upon

fees.  Since that is what Robinson alleges here, his claim fails as a

matter of law.

### 1.    Robinson Does Not Allege That BANA Made An Affirmative Misrepresentation.

In his Complaint, Robinson does not allege a single affirmative

misrepresentation made by BANA—the Complaint itself deals only

with "omissions".  Indeed, Robinson's fraud claim is expressly

captioned "fraud by omissions" (Complaint; II ER 57), and his CLRA

claim deals only with alleged "failure by Defendant to disclose"

certain facts (*Id.* at ¶¶ 24-25; II ER 59-60).

In an attempt to save his CLRA claim from dismissal, however,

Robinson argues on appeal that his Complaint alleges an affirmative

misrepresentation:  that BANA allegedly provided services that the

terms of its agreement did not require it to provide, which Robinson

claims renders the terms of the agreement false.  (Op. Br. 22-23.)  Not

true.

### a. A Contractual Term Disclaiming "Customer Service" Is Not Rendered "False" By The Fact That CashPay Customers Could Withdraw Cash.

Robinson argues that a factual allegation contained in paragraph 17 of his Complaint (part of his "fraud by omissions" claim) states an affirmative misrepresentation for purposes of his CLRA claim. (Op. Br. 22-23.) Paragraph 17 of Robinson's Complaint alleges that BANA's Frequently Asked Questions "falsely represent[] that consumers cannot go to a local banking center for customer service on a CashPay account." (II ER 58.) Robinson argues that statement is false because "consumers can go to a branch location and withdraw funds from their CashPay accounts." (Op. Br. 22-23.) But those are two different things.

The Frequently Asked Questions discuss various customer services that bank branches will not provide—none of which relate to the withdrawal of money. (Complaint, Ex. 5; II ER 95.) By contrast, the CashPay Terms & Conditions make clear that CashPay account holders can go to BANA branches to withdraw money. (Complaint, Ex. 3; II ER 81 (". . . Obtaining Cash. Offices of financial institutions that accept Visa cards, *including our offices*, will accept your Card for obtaining cash.") (emphasis added).) Accordingly, BANA explicitly

disclosed to CashPay account holders that they could, in fact, withdraw money at BANA bank branches—even if they could not obtain customer service at a branch.

Robinson incorrectly claims that "[f]or the purposes of Bank of America's motion for judgment on the pleadings, the law requires that Plaintiff's allegations of fact must be deemed true" and because "Plaintiff alleges that Bank of America made false statements . . . whether or not those statements were true or false cannot be decided as a matter of law." (Op. Br. 24.) But this Court "is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Here, the Court can decide the validity of Robinson's claims as a matter of law because the documentation he points to as "misrepresentations" actually contradict the allegations in his Complaint. When the materials upon which Robinson relies are read as a whole, they demonstrate that BANA did not make any affirmative misrepresentations. *See Freeman v. Time, Inc.*, 68 F.3d 285, 286 (9th Cir. 1995) (sweepstakes promotional materials not actionable under

the CLRA because when read reasonably and in context, the materials did not falsely represent that the recipient won a contest).

> **b.    A Party's Waiver Of A Contractual Term Designed For Its Benefit Does Not Turn That Contractual Term Into An "Affirmative Misrepresentation" Under The CLRA.**

Alternatively, even if the Court accepted Robinson's argument that withdrawing money is a customer service that renders "false" any assertion that CashPay customers could not obtain customer service at bank branches, Robinson still fails to state a claim under the CLRA. Put simply, that is not an ***actionable*** misrepresentation—it is simply a waiver of a contractual term.

California has long held that a contracting party may waive contract provisions intended for its benefit.  *See Wyler Summit Partnership v. Turner Broadcasting System, Inc*., 135 F.3d 658, 662 (9th Cir. 1998) ("It is a well-established principle of California law that 'a contracting party may waive conditions placed in a contract solely for the party's benefit.'  In fact, this maxim of contract law has appeared in California jurisprudence for more than nine decades . . .") (citations omitted); *Knarston v. Manhattan Life Ins. Co.*, 140 Cal. 57, 63 (1903) ("The law will not compel a man to insist upon any benefit

or advantage secured to him individually."); *see also WYDA Assoc's. v. Merner*, 42 Cal. App. 4th 1702, 1714 (1996).

Here, BANA and Robinson's agreement expressly provides that BANA may waive contractual terms on certain occasions without changing the parties' underlying agreement. *See* BANA Terms & Conditions (Complaint, Ex. 3; II ER 79) ("you are not entitled to any rights or benefits given to other deposit account customers or debit card holders at Bank of America unless such rights or benefits are contained in this Agreement").

Nothing in the CLRA affects that conclusion. The CLRA prevents companies from making false statements about benefits that customers will not actually receive. *See* Cal. Civ. Code §§ 1770(a)(5) and (a)(14). For example, suppose that BANA had advised consumers that they ***could*** withdraw money from a bank branch, but refused to allow customers to withdraw money when they actually arrived at the bank branch. That is the type of misrepresentation the CLRA prevents. But that is not what Robinson alleges here. Robinson alleges that BANA advised customers they could ***not*** go to a branch, yet BANA still provided services when they did. Even assuming the truth of that allegation, it fails to state any claim.

Even assuming BANA provided services that its agreement did not require it to, that is not unlawful. Indeed, the law should encourage that kind of activity—whereas Robinson's lawsuit attempts to punish BANA for doing so.

### 2. Robinson Alleges That BANA "Omitted" To Make Statements That It Had Absolutely No Duty To Make.

Robinson also argues that BANA "omitted" to disclose its practice of not charging fees to CashPay customers who did not have sufficient funds in their accounts to pay them. (Complaint ¶¶ 15, 17, 22, 24; II ER 57-59.) Accepting that allegation as true, Robinson still fails to allege any claim. BANA had no obligation to disclose that practice.

### a. The Existence Of A Duty Is A Question Of Law, Not An Allegation Of Fact, And Robinson Fails To Allege Any Duty Here.

"The existence of a duty is a question of law." *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1203 (S.D. Cal. 2010) (citing *Huggins v. Longs Drug Stores Cal., Inc.*, 6 Cal. 4th 124 (1993)) (internal quotation marks omitted); *see also Ellison v. Shell Oil Co.*, 882 F.2d 349, 352 (9th Cir. 1989) ("'Duty is primarily a

question of law . . . .") (citing *Hedlund v. Superior Court*, 34 Cal. 3d

695, 705 (1983)).

Robinson appears to argue that his bare allegation that BANA

had a duty to disclose is something this Court must accept as true.

(Op. Br. 22-24.)  Robinson is wrong.  This Court need not accept the

truth of allegations of legal conclusions.  *See generally Western*

*Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *Perfect*

*10, Inc.*, 494 F.3d at 794 ("the court need not accept conclusory

allegations of law or unwarranted inferences").

Here, there is no legal basis for Robinson's argument that

BANA has some legal duty to inform him of BANA's waiver of

contractual terms with respect to other customers.  The monthly

maintenance fee was a term of BANA's agreement with CashPay

account holders, including Robinson, and the account holders each

agreed to pay this fee.  (*See* Complaint, Ex. 3; II ER 82 ("You agree to

pay all fees listed in the Fee Schedule.  Fees will be taken from the

balance of your account as they apply.").)  Robinson had no right to

avoid paying those fees, and BANA cannot have had any duty to

advise Robinson that he could avoid paying fees when he had no right

to do so.

It is true that BANA waived or reduced fees for customers with insufficient funds in their accounts.  Significantly, the parties' agreement allowed BANA to make such accommodations without affecting its right to collect fees from Robinson.  The Terms & Conditions of the agreement explicitly provide that cardholders "are not entitled to any rights or benefits . . . unless such rights or benefits are contained in this Agreement."  (Complaint, Ex. 3; II ER 79.) Robinson therefore had no right to avoid paying the fees, and BANA could not have had any duty to disclose to Robinson how he might avoid paying those fees.

### b. Robinson Takes Out Of Context Principles Regarding Duties To Disclose That Cannot Apply Here.

None of the decisions on which Robinson relies supports the finding of any duty to disclose in the circumstances of this case.  (Op. Br. 25.)  Robinson takes language in those decisions out of context in support of his argument that, for example, there is a "duty" to disclose facts that only one party knows.  (*Id.* at 25.)  It is not the law that simply having a secret imposes a legal duty to disclose it.  Whether there is a duty to disclose unknown facts depends on the relationship of the parties and the circumstances of the case, and none of the

decisions on which Robinson relies deals with the relationship or circumstances presented here.

For example, the existence of a confidential relationship may impose a duty to disclose facts, but no such relationship is alleged to exist here. "Although material facts are known to one party and not the other, failure to disclose them is ordinarily not actionable fraud unless there is some fiduciary relationship giving rise to a duty to disclose." *Nussbaum v. Weeks*, 214 Cal. App. 3d 1589, 1599 (1989) (quoting 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 697, pp. 799-800).

The first case on which Robinson relies, *Pashley v. Pacific Elec. Ry. Co.*, 25 Cal. 2d 226 (1944), illustrates this point. That case held that "the confidence growing out of the relationship of doctor and patient imposed upon the physician the duty of refraining from fraudulent concealment, that is, the duty of disclosure when he had knowledge of the facts." *Id.* at 235. BANA was not Robinson's doctor—it was his bank. And it is well settled that the banking relationship is not a confidential one. *See, e.g.*, *Lawrence v. Bank of America*, 163 Cal. App. 3d 431, 437 (1985) ("the relationship between a bank and its depositor is that of a debtor-creditor, and is not a

fiduciary one.").  Robinson's out-of-context reliance on cases dealing with confidential relationships, therefore, is misplaced.

The second case on which Robinson relies, *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal. 3d 285, 293-94 (1970), contains language that appears to expand that duty—but only when taken out of context.  As explained by *La Jolla Village Homeowners' Ass'n, Inc. v. Superior Court*, 212 Cal. App. 3d 1131 (1989), *overruled in part on other grounds in Jimenez v. Superior Court*, 29 Cal. 4th 473 (2002), *Warner* was discussing an action for **breach of contract**, not a tort claim for fraudulent concealment.  Thus, "the language in that case on which [Plaintiff] relies for the proposition a tort cause of action for nondisclosure can be stated against [Defendants] even without some privity, confidential or fiduciary relation is inapposite." *Id.* at 1150.

Outside of a confidential relationship, a duty to disclose information may be imposed in certain circumstances by statute—but no such statute applies here.  For example, "it is well established that the seller [in a real property transaction] is under an affirmative duty to disclose material facts concerning the property." *Nussbaum*, 214 Cal. App. 3d at 1599.  The third case on which Robinson relies is such

a case.  *See Karoutas v. Homefed Bank*, 232 Cal. App. 3d 767, 771 (1991) ("The principal issue on appeal is whether HomeFed, given its alleged knowledge of defects in the property and residence, had a duty to disclose the defects to the Karoutases.").  But that duty is specifically imposed by statute.  *See Nussbaum*, 214 Cal. App. 3d at 1600 ("the sellers' duty of disclosure is now codified in statutes applicable only to the seller") (citing Cal. Civ. Code § 1102 *et seq*.).  Robinson's reliance on such authorities is misplaced here, since no statute imposes a duty of disclosure on BANA—and, indeed, if any such statute purported to impose such a duty, it would be preempted by the NBA.

By contrast, *Bardin*, 136 Cal. App. 4th at 1276, and *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 984 (2008), make clear that there is no duty to disclose here, and Robinson's attempts to distinguish them fail.  Tellingly, Robinson does not provide any reasons for his statement that these cases are "inapposite."  (Op. Br. 26.)

Factually, the plaintiff's claims in *Buller*, 160 Cal. App. 4th at 984, and Robinson's claims here, are quite similar.  In *Buller*, the plaintiffs alleged violations of the CLRA because the defendants did

- 46 -

not inform them about the availability of a discount the defendants made available to other customers. *Id.* The court observed that the trial court found the defendants' practice did not violate the CLRA, and the plaintiffs did not challenge that holding on appeal. *Id.* Similarly, here, Robinson alleges that BANA had some duty to inform consumers about the waiver for some customers of the monthly maintenance fee. As in *Buller*, this is not a violation of the CLRA, and Robinson's CLRA claim should be rejected.

*Bardin* is also instructive. 136 Cal. App. 4th at 1276. In that case, the court explained, "Plaintiffs' claim for violation of the CLRA fails because the second amended complaint neither alleged facts showing [DaimlerChrysler] was 'bound to disclose' its use of tubular steel exhaust manifolds, nor alleged facts showing [DaimlerChrysler] ever gave any information of other facts which could have the likely effect of misleading the public 'for want of communication' of the fact it used [these] manifolds." 136 Cal. App. 4th at 1276. Similarly, nothing in Robinson's Complaint demonstrates that BANA was "bound to disclose" that the monthly maintenance fee was waived in certain circumstances.

In short, the Complaint alleges no facts to support the conclusion that BANA made any affirmative representation or that it had any duty to disclose any additional information. Thus, the dismissal of Robinson's CLRA claim should be affirmed.

## B.    Robinson's Fraud By Omission Claim Fails As A Matter Of Law.

Robinson's claim for fraud by omission fails for the same reasons as his CLRA claim:  Robinson has not alleged any affirmative misstatement or any duty to disclose additional information. Significantly, Robinson concedes that if his CLRA claim fails, his fraud by omission claim also fails.  (Op. Br. 26-27.)

Thus, for the reasons set forth above, Robinson's fraud claim fails.  Like his CLRA claim, Robinson's fraud by omission claim is dependent upon his allegations that "CashPay account maintenance fees can be avoided by going to a branch location and withdrawing funds from a CashPay account," and that the non-disclosure of that fact somehow "constitutes fraud by omission or deceit within the meaning of [California] Civil Code Section 1710."  (Complaint ¶ 19; II ER 58-59.)

Section 1710 defines deceit, in relevant part, as "[t]he suppression of a fact, by one who is bound to disclose it, or who gives

information of other facts which are likely to mislead for want of communication of that fact . . . ."  Cal. Civ. Code § 1710, subd. 3.  To prove fraud by omission, then, Robinson must prove:  "(1) the defendant . . . concealed or suppressed a material fact, (2) the defendant [was] under a duty to disclose the fact to the plaintiff, (3) the defendant . . . intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff [was] unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff . . . sustained damage."  *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 868 (2008) (quoting *Mktg. West, Inc. v. Sanyo Fisher (USA) Corp*., 6 Cal App. 4th 603, 612-613 (1992); *Lovejoy v. AT&T Corp*., 119 Cal. App. 4th 151, 158 (2004)); *see also Linear Tech. Corp. v. Applied Materials, Inc*., 152 Cal. App. 4th 115, 131 (2007), *rev. denied* (Oct. 17, 2007).

As set forth in detail above, Robinson's Complaint fails to allege that BANA either made any affirmative misrepresentations relating to the maintenance fees or had any duty to disclose that the fee could be avoided.  *Goodman v. Kennedy*, 18 Cal. 3d 335, 346

(1976) (validity of fraud claim based solely on omissions depends upon establishing a duty to disclose on the part of defendant); *Norkin v. U.S. Fire Ins. Co.*, 237 Cal. App. 2d 435, 438 (1965) (affirming order sustaining demurrer based on plaintiff's failure to plead either an affirmative misrepresentation or a duty to disclose as a basis for fraudulent omissions).  Thus, Robinson's fraud by omission claim fails as a matter of law.

### C.  Plaintiff Has Not Stated A Viable Claim For Unfair Competition.

Robinson's derivative claim under the UCL likewise fails.  The UCL proscribes "any unlawful, unfair or fraudulent business act or practice . . . ."  Cal. Bus. & Prof. Code § 17200; *see generally Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Robinson alleges that BANA violated each of these three prongs of the UCL—unlawful, unfair, or fraudulent—by its failure "to disclose to consumers that CashPay account maintenance fees can be avoided by going to a branch location and withdrawing funds from a CashPay account."  (Complaint ¶ 32; II ER 61.)  But BANA's practice of reducing or waiving fees for certain customers without informing other customers, like Robinson, is not unfair competition.

Robinson's UCL claim fails for two reasons. First, Robinson does not have standing to bring a UCL claim because he did not suffer an injury in fact. Paying a fee that one agreed to pay is not an injury, and the fact that BANA waived that fee for certain other customers does not change that conclusion. Second, Robinson's claims fail under each prong of the UCL because BANA's practice of reducing or waiving the fees for some customers who lack money in their account to pay the fees (but not others with money in their account to pay the fees) is not unlawful, unfair, or fraudulent.

### 1. Robinson Lacks Standing To Bring A UCL Claim.

Robinson does not have standing to bring a UCL claim because he did not suffer an injury in fact. Under the UCL, standing is limited to those who have (1) suffered injury in fact and (2) have lost money or property (3) as a result of the unfair competition by the defendant. Cal Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). Robinson's UCL claim is based on his allegations that he was "deceived into spending money" (Op. Br. 27-28) because BANA waived the monthly maintenance fee for others, but not him. That is not an injury.

A customer who is charged an undisclosed fee might suffer an injury in fact. *See, e.g., Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305 (2009) ("injury in fact" established where plaintiff alleged that he and the other class members paid monthly service charges that were not disclosed as premium in violation of the statutory requirement that an insurance policy provide a statement of the premium). But here there is no dispute. Robinson knew that he would be charged the fee and agreed to pay it. (*See* Complaint ¶ 6, Ex. 3; II ER 54, 82 ("You agree to pay all fees listed in the Fee Schedule. Fees will be taken from the balance of your account as they apply.").) Robinson does not and cannot cite any authority finding that a plaintiff established an "injury in fact" simply by paying a fee that he or she was aware of and expressly agreed to pay.

Robinson contends that "had Plaintiff known the truth that [BANA] does not charge account maintenance fees unless cardholders have a high enough balance in their account, Plaintiff would have withdrawn funds from his account so that he would not have been charged or had to pay account maintenance fees." (Op. Br. 28.) That may well have been what Robinson would have done if he had known of BANA's practice of not charging fees to customers with no money

in their accounts. But that does not mean he had any right to do so. BANA's decision not to collect fees from customers with no money in their accounts was never intended to encourage people to arbitrarily withdraw all of their money—it was a grace BANA offered to people whose accounts ran dry.

Significantly, the Terms & Conditions of the CashPay card clearly state that Robinson and the putative class members had no right to avoid the monthly maintenance fee—regardless of the fact that BANA waived or reduced the fee for other customers. (Complaint, Ex. 3; II ER 79 ("you are not entitled to any rights or benefits given to other deposit account customers or debit Cardholders at Bank of America unless such rights or benefits are contained in this Agreement")). Because Robinson agreed to pay the fee and had no right to avoid it, he cannot have suffered any injury in fact by actually paying it, in accordance with the parties' agreement.

Robinson fails to allege any injury in fact and, therefore, lacks standing to bring a claim under the UCL.

## 2. Robinson's UCL Claim Fails On The Merits.

Even if Robinson had standing to bring a UCL claim against BANA (which he does not), Robinson's UCL claim still fails.

As an initial matter, "[a] plaintiff may not bring an action under the unfair competition law if some other provision bars it." *Cel-Tech*, 20 Cal. 4th at 184. "If the Legislature has permitted certain conduct or considered a situation and concluded that no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Id*. at 182.

There is just such a safe harbor here—the NBA gives BANA the right to charge the monthly maintenance fee and provides that BANA may charge that fee "without regard to state law limitations concerning . . . disclosure requirements." 12 C.F.R. § 7.4007(b)(3). Because BANA's conduct is authorized by federal law, its alleged "failure . . . to disclose" cannot constitute a violation of the UCL. (*See* Complaint ¶ 32; II ER 61.)

Robinson's UCL claim fails for that reason alone, without any further consideration of the merits. But even apart from this safe harbor, Robinson's UCL claim fails on the merits because BANA's conduct was not unlawful, unfair, or fraudulent.

### a.     BANA's Conduct Was Not Unlawful.

The "unlawful" prong of the UCL "borrows violations of other laws and makes those unlawful practices actionable under the UCL." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007) (citing *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999)); *see also Cel-Tech Commc'ns, Inc.*, 20 Cal 4th at 180; *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).

Robinson's Complaint alleges that BANA "engaged in unlawful business practices because the failure by [BANA] to disclose to consumers that CashPay account maintenance fees can be avoided constituted deceit under Civil Code Section 1710 and/or deceptive practices in violation of the CLRA." (Complaint ¶ 32; II ER 61.)

As described above, Robinson's claims under the CLRA and Civil Code § 1710 fail as a matter of law. Therefore, his derivative claim under the "unlawful" prong of the UCL also fails. *See Daugherty*, 144 Cal. App. 4th at 837 ("[W]e rejected Daugherty's claims that Honda's conduct violated Magnuson-Moss and the CLRA. Consequently, Daugherty cannot state a violation of the UCL under the 'unlawful' prong predicated on a violation of either statute, as there were no violations."); *Krantz v. BT Visual Images*, 89 Cal. App.

4th 164, 178 (2001) (UCL claim rises or falls "depending on the fate of antecedent substantive causes of action.").

### b.      BANA's Conduct Was Not Fraudulent.

From the conclusion that Robinson fails to allege unlawful conduct under Civil Code § 1710, which prohibits fraud, it necessarily follows that Robinson fails to allege fraudulent conduct under the UCL either.

To show that conduct is fraudulent under the UCL, a plaintiff must show "that members of the public are likely to be deceived." *Daugherty*, 144 Cal. App. 4th at 838; *see also Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) (finding that "if the alleged misrepresentation, in context, is such that no reasonable consumer could be misled, then the allegation may also be dismissed as a matter of law").

Nothing about BANA's actions or its materials related to the CashPay card is deceptive.  Customers who agree to pay fees are not "deceived" into doing so simply because a company waives those fees for other customers—and because the latter has no bearing on the former, companies have no duty to disclose such waivers. Significantly, "a failure to disclose a fact one has no affirmative duty

to disclose" is not "'likely to deceive' anyone within the meaning of the UCL." *Daugherty*, 144 Cal. App. 4th at 838.

In similar circumstances, the *Buller* court found that customers who were not advised of discounts offered to other customers were "not 'likely to be deceived' by the omission of a fact that was not required to be disclosed in the first place." *Id*. at 987. The court explained that customers in the plaintiff's position were not likely to be operating under the expectation that they were entitled to a discount. *Id*. at 988.

Similarly here, BANA had no duty to disclose its practice of not collecting the full monthly $1.50 fee from CashPay customers who had less than $1.50 in their accounts. There is simply nothing fraudulent about charging Robinson a fee that Robinson agreed to pay, whether or not BANA would have enforced its right to that fee if Robinson had lacked the funds in his account to pay it.

### c.    BANA's Conduct Was Not Unfair.

Robinson also fails to allege that BANA's conduct was "unfair" within the meaning of the UCL.

**(1)    Robinson's Allegations Are Untethered To Any Legislatively Declared Policy.**

To satisfy the "unfair" prong of the UCL, the plaintiff's allegations must "be tethered to some legislatively declared policy." *See Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 186-87.  Robinson does not—and cannot—identify any such policy, and his "unfair" competition claim fails for that reason alone.

Robinson incorrectly argues that this test only "applies to claims of anticompetitive conduct brought by a business competitor . . . [and] not . . . to UCL claims brought by consumers."  (Op. Br. 30.) Robinson is wrong.[5]  *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007).  According to Robinson, *Lozano* permits district courts to "choose to follow either the *Cel-Tech* definition of 'unfair' or the balancing test under the contrary line of California

---

[5] Robinson's confusion appears to stem from the fact that the California Supreme Court in *Cel-Tech* did set forth a more specific test that applies in claims between competitors:  in that context, unfair "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cel-Tech*, 20 Cal. 4th at 187.  In all cases, however, the UCL requires that unfairness "be tethered to some legislatively declared policy."  *Id.* at 186-87.

appellate authority." (Op. Br. 31.) Nothing in *Lozano* permits such a choice.

To the contrary, commenting on the conflicting decisions of the California Courts of Appeal regarding that question, the Ninth Circuit stated in *Lozano*: "we agree with the Fourth District that *Cel-Tech* effectively rejects the balancing approach." *Lozano*, 504 F.3d at 736. The Ninth Circuit in that case did affirm the district court's decision even though it applied the balancing approach, but in doing so it noted that the tests "are not mutually exclusive" so long as "the alleged unfairness was *both* tethered to a legislatively declared policy *and* the plaintiff could prove facts showing that the harm was not outweighed by the utility." *Id.* (emphasis in original).

By contrast, *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035 (9th Cir. 2010), apparently did define unfairness with reference to a balancing test. But it does so in just a single sentence, which relies on a California Court of Appeal case decided five years before *Cel-Tech*. *Shroyer* does not consider either *Cel-Tech* or subsequent decisions discussing the extent of its application, such as *Lozano*—a prior Ninth Circuit decision that the panel in *Shroyer* was bound to follow. *Shroyer*'s cursory mention of "unfairness," coupled

- 59 -

with its failure to discuss intervening California Supreme Court and Ninth Circuit authority, resulted from the fact that the issue was not presented in, and was not important to the outcome of, that case. Accordingly, *Shroyer* does not constitute authority on the question presented here under the principle that decisions are not authority for propositions not considered therein. *See, e.g.*, *Machado v. Superior Court*, 148 Cal. App. 4th 875, 881 (2007) ("Cases are not authority for propositions not decided.").

The three additional district court decisions Robinson cites are to the same effect: they fail to consider or follow *Lozano*, and instead apply the test set forth by the California Court of Appeal in *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394 (2006). (Op. Br. 31, citing *Lyons v. Bank of America, N.A.*, 2011 WL 3607608 (N.D. Cal. Aug. 15, 2011); *Kilgore v. Keybank*, 712 F. Supp. 2d 939 (N.D. Cal. 2010); *Barriga v. JP Morgan Chase Bank, N.A.*, 2010 WL 1037870 (N.D. Cal. March 19, 2010).)

This Court should reject the post-*Lozano* decisions that fail to consider that case, and should reaffirm that *Lozano* is the law of this Circuit.

### (2)     Robinson's UCL Claim Fails Under The FTC Test.

Robinson asks this Court to follow *Camacho*, in which the California Court of Appeal "chose to apply the three-pronged test contained in the Federal Trade Commission Act, 15 U.S.C. § 45(a)." *See Lozano*, 504 F.3d at 736; *but see id.* ("*we do not agree that the FTC test is appropriate in this circumstance.*") (emphasis added).

Under the Federal Trade Commission ("FTC") test, "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Camacho*, 142 Cal. App. 4th at 1403.

Robinson fails all three prongs of the FTC test.

First, Robinson fails to allege any "substantial" injury. His allegation that he was required to pay a $1.50 fee that he agreed to pay simply cannot constitute a "substantial" injury.

Second, even if there were any substantial injury, that injury is outweighed by the benefits to consumers. Robinson and all of BANA's other customers using CashPay cards agreed to pay the $1.50 fee. The fact that BANA reduced or waived that fee for customers with less than $1.50 in their accounts was clearly a benefit

to them.  In asserting a lawsuit against BANA for conferring such a benefit, Robinson effectively asks this Court to discourage BANA and other companies from ever deviating from the strict terms of their contracts—even if the deviation is *in consumers' favor*.  In these circumstances, any "unfairness" to Robinson in actually paying a fee that he agreed to pay is clearly outweighed by the benefit to other customers whose fees were reduced or waived.

Third, Robinson easily could have avoided any injury in paying the fee by simply not using BANA's CashPay service and, therefore, not agreeing to pay it.  No one forced Robinson to use BANA's services, and Robinson cannot complain that he was injured by paying the fees he himself agreed to pay for those services.  (*See* Complaint ¶ 6; II ER 54.)

### (3)     What Robinson Complains Of Is Simply Not Unfair.

Under any conceivable standard of fairness, there is nothing unfair about BANA charging customers fees that they agreed  to pay—whether or not BANA reduces or waives those fees for certain other customers.

The UCL is not designed to put an end to such practices, which as *Buller* explains are "beneficial rather than harmful," since any

contrary rule would require BANA to take customers with less than $1.50 in their account into a negative account balance. Such a rule would be economically inefficient for businesses that may prefer not to enforce claims against customers with minimal debts, and it would be detrimental to customers who lack the assets to pay those debts. What Robinson demands is "unfair." BANA's actions are not. Thus, Robinson's allegations are insufficient to establish a viable claim for "unfair" conduct under the UCL.

## CONCLUSION

BANA respectfully requests that the District Court's judgment of dismissal be affirmed. A bank's practice of reducing or waiving fees for customers who lack the funds to pay them is not something that should be condemned—certainly not in a court of equity and law. Such waivers should be encouraged. Allowing Robinson to proceed with his claims would have the opposite effect.

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, BANA is not aware of any related case pending in this Court.

Dated:  July 26, 2012.          O'MELVENY & MYERS LLP
                                FRAMROZE M. VIRJEE
                                ADAM J. KARR
                                RYAN W. RUTLEDGE
                                LAUREN A. ELKERSON


                                By:    s/ Adam J. Karr
                                       Adam J. Karr
                                Attorneys for Appellee
                                Bank of America, N.A.

**Form 6.      Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒ this brief contains <u>12,832</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains_____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒ this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)* Microsoft Word
*(state font size and name of type style)* 14-point Times New Roman , *or*

☐ this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* _____
with *(state number of characters per inch and name of type style)*

_____ .

Signature | s/ Adam J. Karr

Attorney for | Appellee Bank of America, N.A.

Date | July 26, 2012

| 9th Circuit Case Number(s) | 11-57194 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  July 26, 2012 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)    s/ Adam J. Karr

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)